UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EMMANUEL COLAS,

                Plaintiff,

      - against -

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-7838 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Emmanuel Colas brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB").  (Compl., Dkt. 1.)  Plaintiff moves for judgment on the pleadings, asking this Court to remand to the SSA for a redetermination.  (Pl.'s Mot. J. Pleadings, Dkt. 9.)  The Commissioner of the SSA ("Commissioner" or "Defendant") has filed a cross-motion for judgment on the pleadings (the "cross-motion"), asking this Court to affirm its determination. (Def.'s Cross-Mot. J. Pleadings, Dkt. 10.)  For the reasons stated below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I.    Procedural History

On September 4, 2020, Plaintiff filed for DIB with the SSA, alleging disability beginning on March 18, 2015.  (Admin. Tr.[1], Dkt. 6, at 93.)  Plaintiff claimed that he was disabled due to

---

[1] Page references prefaced by "Admin. Tr." refer to the continuous pagination of the Administrative Transcript, (*see* Dkt. 6), appearing in the lower right corner of each page, and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

fibromyalgia, neuropathy, migraine headaches, back pain, anxiety, and gastroesophageal reflux disorder. (*Id.*) Plaintiff asserted that, as a result of these conditions, he could not stand long enough to shave, took hours to cook, and could only walk for ten minutes before needing to rest for several hours. (*Id.* at 290–96.) Plaintiff's claim for DIB was initially denied on February 3, 2021, (*id.* at 121), and again upon reconsideration on June 30, 2021, (*id.* at 128). On August 4, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 140.) On January 13, 2022, a virtual hearing was held before ALJ Patrick Kilgannon. (*Id.* at 67–90.) At the hearing, Plaintiff amended the alleged onset date of his disability from March 18, 2015, to April 28, 2018, which was the date that Plaintiff was involved in a motor vehicle accident. (*Id.* at 70–71.) On June 28, 2022, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). (*Id.* at 12, 23.) On August 12, 2022, Plaintiff requested a review of that decision by the SSA Appeals Council.[2] (*Id.* at 235–36.) On August 21, 2023, the Appeals Council denied review, and the ALJ's decision became final. (*Id.* at 1.) On October 20, 2023, Plaintiff sought timely judicial review of the decision by this Court.[3] (Compl., Dkt. 1.)

---

[2] The Appeals Council "oversee[s] the [SSA's] hearings and appeals process," "promote[s] national consistency in hearing decisions" made by ALJs, and ensures that the Commissioner's "records [are] adequate for judicial review." *Brief History and Current Information About the Appeals Council*, Soc. Sec. Admin., https://www.ssa.gov/appeals/about_ac.html [https://perma.cc/QR7E-CZGP] (last visited Mar. 19, 2026). Upon "disagree[ment]" with the ALJ's decision, a plaintiff may file an appeal with the Appeals Council. (Admin. Tr., Dkt. 6, at 8.) A plaintiff may send a written statement and any new evidence with the appeal. (*Id.* at 9.) The Appeals Council reviews all ALJ decisions and may deny the appeal, remand the case, issue its own decision, or dismiss the case. (*Id.* at 10.)

[3] An individual may seek judicial review of any final decision of the Commissioner of within 60 days after the notice of decision is mailed to the claimant. 42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (first citing 20 C.F.R. §§ 404.981, 422.210(c); and then citing *Matsibekker v. Heckler*, 738 F.2d 79, 81 (2d Cir. 1984)). Accordingly, Plaintiff is presumed to have received the notice of decision on August 26, 2023. (Admin. Tr., Dkt. 6, at 1 (showing final decision date of August 21, 2023).)

2

## II.      The ALJ's Decision

### A.      The Five-Step Inquiry

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The "relevant time period" under consideration is the date of a plaintiff's alleged onset of a disability to the date of last insured ("DLI").[4]  *See Kugielska v. Astrue*, No. 06-CV-10169 (PKC), 2007 WL 3052204, at *2 (S.D.N.Y. Oct. 16, 2007). To determine whether an individual is entitled to disability benefits in the relevant time period, an ALJ applies a five-step inquiry, *Lesterhuis v. Colvin*, 805 F.3d 83, 86 n.2 (2d Cir. 2015), whereby the plaintiff bears the burden of proof at the first four steps of the inquiry, and the Commissioner bears the burden at the final step, *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

First, the ALJ must determine whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial gainful activity" is work activity done for pay or profit that involves significant physical or mental activities.  *Id.* § 416.972.  If the answer is yes, the plaintiff is not disabled.  *Id.* § 404.1520(a)(4)(i).  If the answer is no, the ALJ

---

Since Plaintiff filed his Complaint on October 20, 2023, (Compl., Dkt. 1), less than 60 days later, this action is timely.

[4] To be eligible for disability insurance benefits, an applicant must be "insured for disability . . . benefits."  *See* 42 U.S.C. § 423(a)(1)(A).  Being insured requires that an individual accumulate the requisite number of "quarters of coverage."  *Id.* § 423(c)(1)(B); *see also* 20 C.F.R. §§ 404.120–404.146.  The "date last insured," or "DLI," is the last day of the last quarter of coverage in which disability insured status is met.  *Callahan v. Astrue*, No. 09-CV-1441 (TJM) (DRH), 2011 WL 2517022, at *8 (N.D.N.Y. May 5, 2011), *report and recommendation adopted*, No. 09-CV-1441, 2011 WL 2516707 (N.D.N.Y. June 23, 2011).  A "claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits."  (Admin. Tr., Dkt. 6, at 12.)

must proceed to step two.  At step two, the ALJ must determine whether the claimant has any medically determinable physical or mental impairments, and then must consider the severity of those impairments.  *Id.* §§ 404.1520(a)(4)(ii), 404.1521.  A physical or mental impairment is a "medically determinable impairment" if it "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 404.1521.  Such an impairment (or combination of impairments) is "severe" if it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities."  *Id.* § 404.1522(a).  If the impairment (or combination of impairments) is not severe, then the plaintiff is not disabled.  *Id.* § 404.1520(a)(4)(ii).

If the plaintiff suffers from an impairment or combination of impairments that is severe, then the ALJ must proceed to the third step and consider whether the impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments").  *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1.  If at step three the ALJ determines that the plaintiff has one of the listed impairments that has lasted or is expected to last for a continuous period of at least 12 months, then the ALJ will find that the plaintiff is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1509.

If the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.  *See id.* §§ 404.1520(a)(4)(iv)–(v), 404.1560(a).  "RFC is defined as an individual's ability to do physical and mental work activities on a sustained basis despite limitations imposed by his impairment."  *Medina v. Comm'r of Soc. Sec.*, No. 13-CV-2323 (KAM), 2016 WL 4402010, at *10 (E.D.N.Y. Aug. 18, 2016) (citing 20 C.F.R. § 416.945(a)(1)).  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, such as pain, [that] may cause

4

physical and mental limitations that affect what [the plaintiff] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In determining a plaintiff's RFC, the ALJ "must consider *all* impairments, including those that he concluded were not severe." *Bellinger v. Comm'r of Soc. Sec.*, No. 3:17-CV-1692 (MPS), 2018 WL 6716092, at *2 n.2 (D. Conn. Dec. 21, 2018) (citing 20 C.F.R. § 404.1545). The ALJ is responsible for assessing the plaintiff's RFC "based on all the relevant evidence in the case record." *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019) (quoting *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005)).

The ALJ must then use the RFC finding to determine if the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* If the plaintiff cannot perform past relevant work, or if no past relevant work exists, the ALJ must proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c). If the answer is yes, the plaintiff is not disabled; otherwise, the plaintiff is disabled and is entitled to benefits. *Id.* § 404.1520(a)(4)(v).

### B.   The Decision

Here, at step one, the ALJ noted that Plaintiff has not engaged in any substantial gainful activity since April 28, 2018, the alleged onset date of Plaintiff's claimed disabilities. (Admin. Tr., Dkt. 6, at 14.) At step two, the ALJ found that Plaintiff had multiple severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; obesity; chronic pain syndrome; and migraine headaches. (*Id.*) However, the ALJ found that Plaintiff's other alleged impairments, including hypercholesterolemia, asthma, an arachnoid cyst, thyroid nodules, and esophagitis, were not severe, and that Plaintiff had a non-medically determinable impairment of fibromyalgia. (*Id.* at 14–15.) The ALJ also noted that Plaintiff had non-medically determinable

5

impairments of anxiety and a mood disorder, but because "both conditions were in 2020, after the end of the DLI," they were "not applicable." (*Id.* at 15.)  Plaintiff's DLI is June 30, 2019.  (*See id.* at 12.)  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the impairments in the Listing of Impairments.  (*Id.*)

At step four, the ALJ found that Plaintiff had the RFC necessary to perform "light work,"[5] and could "lift, carry, push, and pull up to ten pounds frequently and twenty pounds occasionally," as well as "sit, stand, and walk for six hours in an eight-hour workday." (*Id.*)  In reaching this RFC determination, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 20.)  Specifically, the ALJ determined that, despite Plaintiff's complaints of pain, his treatments for his allegedly disabling conditions were "unremarkable" and "essentially routine and/or conservative in nature," and that he did not "require any surgical procedures, was not hospitalized for physical reasons, and his migraine headaches did not significantly inhibit his ability to function." (*Id.*)  To reach the RFC determination, the ALJ also found persuasive the opinion of non-examining medical expert Dr. Beverly Yamour, who, according to the ALJ, "had full access to the claimant's entire medical history," and determined that Plaintiff could do light work.  (*Id.* at 21; *but see id.* at 78–79 (Dr. Yamour stating, "I don't have [records after Exhibit 9F]," and therefore she "really couldn't speak to" the information in those documents).)  The ALJ found less persuasive the opinions of Drs. A.

---

[5] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). For light work, even though "the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

6

Lee and D. Schwartz, state agency medical consultants, because they "overstated [Plaintiff's] physical capabilities by finding he could do medium work." (*Id.* at 21.)

Lastly, at step five, the ALJ found that Plaintiff had no past relevant work, but, based on his age, education, work experience, and RFC, he could perform jobs that exist in significant numbers in the national economy, such as maid, cafeteria worker, and mail clerk. (*Id.* at 21–22.) The ALJ thus found Plaintiff not to be disabled under the Act, and his DIB claim was denied. (*Id.* at 23.)

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To assess whether the ALJ's findings are supported by substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Findings of fact that are supported by substantial evidence are conclusive and must be upheld by the reviewing court. 42 U.S.C. § 405(g).

In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale. *See id.*; *see also Grace v. Astrue*, No. 11-CV-9162 (ALC), 2013 WL

7

4010271, at \*14 (S.D.N.Y. July 1, 2013) ("Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision."); *Feliciano v. Comm'r of Soc. Sec.*, No. 21-CV-1800 (AMD), 2022 WL 4646496, at \*4 (E.D.N.Y. Sep. 30, 2022) (same); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) (observing that, consistent with the Act's remedial purpose, courts often remand when relevant evidence "was not explicitly weighed and considered by [the agency], although such consideration was necessary to a just determination of a claimant's application"); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (explaining remand is appropriate for further development of the evidence and for a clearer explanation of the decision). Even when the claimant does not raise the issue, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record." *Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-4760 (PKC), 2022 WL 580983, at \*4 (E.D.N.Y. Feb. 24, 2022) (quoting *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at \*10 (S.D.N.Y. Aug. 6, 2021) (collecting cases)). This duty exists even if the plaintiff is represented by counsel. *See Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at \*18 (S.D.N.Y. Sep. 17, 2015) (citing *Pratt*, 94 F.3d at 37).

## DISCUSSION

Plaintiff argues that the ALJ's determination was in error because the RFC did not include work limitations for Plaintiff's migraine headaches and did not explain the ALJ's reasoning for this determination. (Pl.'s Mem in Supp. Mot. J. Pleadings, Dkt. 9-1.) The Court grants Plaintiff's motion and remands this case to the SSA, but not for the reason argued by Plaintiff. *See Figaro v. Comm'r of Soc. Sec.*, No. 21-CV-4481 (PKC), 2022 WL 4647102, at \*4–5 (E.D.N.Y. Sep. 30, 2022) (remanding for failure to develop the record even though the plaintiff did not explicitly raise the issue). Specifically, the Court finds that remand is warranted based on the ALJ's conclusion that Plaintiff's mental health impairments and fibromyalgia were not medically determinable. As

to Plaintiff's mental health impairments, the Court finds that remand is warranted for the ALJ to develop the record as to Plaintiff's treatment, an ambiguity that was ignored because the ALJ erroneously failed to consider mental health records from outside the relevant time period.  As to Plaintiff's fibromyalgia, the Court determines that remand is necessary for a clearer explanation of the ALJ's decision, particularly in light of record evidence indicating certain signs and symptoms of the impairment.

## I.    ALJ's Finding That Petitioner Had No Medically Determinable Mental Health Impairments

The sum and substance of the ALJ's conclusion that Plaintiff's mental health impairments were not medically determinable was that there was no evidence of treatment during Plaintiff's relevant time period.  (Admin. Tr., Dkt. 6, at 15.)  For the following reasons, the Court finds that the ALJ erred by refusing to consider treatment evidence after Plaintiff's DLI to determine whether he had a medically determinable impairment during that period, and, in so doing, failed to recognize gaps in the record and develop them.

It is well established that lack of contemporaneous evidence of disability does not necessarily preclude a claimant's entitlement to benefits.  *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989); *Kenneth Lee C. v. Comm'r of Soc. Sec.*, No. 8:20-CV-0190 (DNH), 2020 WL 7024394, at *4 (N.D.N.Y. Nov. 30, 2020) ("[T]he mere absence of contemporaneous medical evidence of a disabling condition during the relevant time period does not necessarily preclude a finding of disability." (quoting *Norman v. Astrue*, 912 F. Supp. 2d 33, 82 n.74 (S.D.N.Y. 2012))). That is particularly true in the context of mental health-related impairments, where individuals may not seek treatment due to "the excessive cost of treatment, the stigma associated with mental illness, the side effects of psychiatric medications . . . , amongst numerous other[]" reasons.  *See Volkow v. Comm'r of Soc. Sec.*, No. 18-CV-6602 (FB), 2020 WL 5211041, at *1 (E.D.N.Y. Sep.

9

1, 2020) (determining that a plaintiff's failure to seek psychiatric help sooner was not an appropriate basis by which to discount his mental illness). Courts in this Circuit have thus repeatedly held that evidence outside of relevant time period is still pertinent because "it may disclose the severity and continuity of impairments existing before the [DLI] or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the [DLI]." *See Lisa v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 41–42 (2d Cir. 1972)); *Jeffrey A. L. v. Comm'r of Soc. Sec.*, No. 8:24-CV-1084 (AMN) (PJE), 2025 WL 4640422, at *6 (N.D.N.Y. Dec. 18, 2025) (compiling cases finding that evidence after the DLI may be pertinent to the severity and continuity of existing impairments), *report and recommendation adopted*, No. 8:24-CV-1084 (AMN) (PJE), 2026 WL 292072 (N.D.N.Y. Feb. 4, 2026); *Dow v. Astrue*, No. 2:10-CV-0126 (WKS) (JMC), 2011 WL 3739412, at *5 (D. Vt. Aug. 4, 2011) (finding ALJ erred by concluding that, because "there was no evidence of any mental health diagnoses during the relevant [time] period at issue, it necessarily followed that [plaintiff] had no medically determinable mental health impairment"), *report and recommendation adopted*, No. 2:10-CV-0126 (WKS) (JMC), 2011 WL 3714638 (D. Vt. Aug. 24, 2011); *Tari L. E. v. Comm'r of Soc. Sec.*, No. 1:21-CV-1283 (DEP), 2023 WL 395189, at *4–6 (N.D.N.Y. Jan. 24, 2023) ("[I]t was error for the ALJ to not engage in a thoughtful and thorough consideration of whether the evidence from after the plaintiff's DLI was germane to the assessment of her symptoms and functioning during the relevant [time] period . . . ."). As a result, an ALJ "cannot simply ignore" this evidence. *Kenneth Lee C.*, 2020 WL 7024394, at *4 (quoting *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-CV-0010 (DNH), 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020)).

10

But here, the ALJ refused to consider that, throughout Plaintiff's medical records, Plaintiff's physicians noted that he had a "h[istory] of anxiety" and depression. (Admin. Tr., Dkt. 6, at 574, 577, 580, 583 (Dr. Torres Leyva's notes); *id.* at 589, 594 (South Shore Neurologic Associates records); *id.* at 608 (Dr. Maldonado's records).) In August 2020, Plaintiff was referred to one psychiatrist, Dr. Maldonado, who diagnosed him with generalized anxiety disorder based on symptoms of "poor motivation for activities, poor concentration, loss of [interest]" and feeling "uncomfortable around people." (*Id.* at 608; *see also id.* at 482 (Island Interventional Pain Management record from April 2019—pre-DLI—indicating "disinterest").) Dr. Maldonado's records explicitly "attach" the diagnosis "(F41.1) Generalized anxiety disorder" after applying five "Ax[e]s." (*Id.* at 608); *see* 20 C.F.R. § 416.921 (explaining that to be determinable, an impairment must be shown with "medically acceptable clinical and laboratory diagnostic techniques"); *id.* § 416.902(g) (defining "psychological tests" as a diagnostic technique); *Walton v. Saul*, No. 18-CV-4306 (DF), 2019 WL 13222734, at *4 & n.16 (S.D.N.Y. Sep. 24, 2019) (describing the "multiaxial system of assessment" as a "diagnostic technique"). Because "the ALJ's finding at step two is the product of a failure to appropriately review all the evidence before him, thereby precluding meaningful review of whether that finding is supported by substantial evidence," remand is appropriate. *Tari L. E.*, 2023 WL 395189, at *6.[6]

---

[6] Furthermore, the Court cannot conclude that the ALJ's failure to consider the mental health records is harmless, in addition to frustrating review. If an "impairment is not medically determinable, it cannot be severe within the meaning of the SSA, and 'symptom-related limitations and restrictions allegedly resulting from that impairment cannot be considered at step two of the sequential process.'" *Santiago v. Saul*, No. 3:19-CV-1026 (MPS), 2020 WL 5511651, at *2 (D. Conn. Sep. 14, 2020) (quoting *Carpenter v. Astrue*, No. 5:10-CV-0249, 2011 WL 3951623, at *8 (D. Vt. Sep. 7, 2011)). Here, once the ALJ found the impairment to be not medically determinable, he was not required to consider it in determining Plaintiff's RFC. *Id.* at *2–3 (compiling cases). In light of this potentially consequential omission, remand is appropriate. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *15 (E.D.N.Y. Sep. 28, 2017) (finding remand appropriate based on "ALJ's exclusion of an impairment from the list of severe impairments"

By disregarding Plaintiff's post-DLI medical records, the ALJ failed to develop the record in two ways.  First, the record leaves a gap as to the existence of psychiatric records that were not compiled or reviewed.  The record indicates that in or around early 2020, Plaintiff saw another psychiatrist by the name of "Mayak."  (*See* Admin. Tr., Dkt. 6, at 574, 577, 580, 583 (referring to Dr. "Mayak" as Plaintiff's psychiatrist in rheumatology medical records).)  Similarly, other records indicate that, at some point prior to March 2018, Plaintiff had been referred to, and received treatment from, psychiatry and psychology service providers.  (*Id.* at 714.)  This history of treatment can also be gleaned from medical records discussing Plaintiff's past prescriptions for psychiatric medications such as Klonopin, Lexapro, Prozac, Cymbalta, propranolol, lorazepam, nortriptyline, and buspirone.  (*See id.* at 492, 578, 588, 591, 607–08, 714).  Plaintiff even reported that he had suffered from anxiety "*since childhood*," and was "mentally and physically abused by his father."  (*Id.* at 608 (emphasis added); *see also id.* at 83 (Plaintiff testifying that he doesn't "come from a great home life").)  These records create an ambiguity and gap as to whether Plaintiff was receiving psychiatric treatment during the relevant time period and the severity of his mental health conditions.  *See Leslie A.G. v. Kijakazi*, No. 1:21-CV-0408 (LEK) (DEP), 2023 WL 2572900, at *4–5 (N.D.N.Y. Mar. 20, 2023) (finding evidence of prescription of antidepressants prior to the DLI probative of potential impairment).  It is unclear, for example, how long Plaintiff had been seeing these psychiatrists, whether these psychiatrists officially diagnosed Plaintiff, and when and for how long Plaintiff was on these medications.  This gap warrants remand for development of the record.  *See Pratts*, 94 F.3d at 39; *Wallace v. Berryhill*, No. 1:16-CV-0416

---

because "the ALJ fail[ed] to account for functional limitations associated with the excluded impairment in determining the claimant's RFC"); *Santiago*, 2020 WL 5511651, at *3 (remanding for similar reasons).

(MAT), 2018 WL 2425809, at *3 (W.D.N.Y. May 30, 2018) (remanding for failure to develop the record with respect to mental health impairments in light of ambiguity in the record).

Second, as part of the obligation to develop the record, an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians. *Prieto*, 2021 WL 3475625, at *10–11 (collecting cases); *see* 20 C.F.R § 404.1512(b)(1)(i) (explaining than an ALJ "will develop [a claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [their] application unless there is a reason to believe that development of an earlier period is necessary" and that the ALJ will "make an initial" and follow-up request "for evidence from [the claimant's] medical source"). An ALJ's "duty to develop the record is further enhanced when the disability in question is a psychiatric impairment." *Horowitz v. Comm'r of Soc. Sec.*, No. 20-CV-2351 (PKC), 2021 WL 4147271, at *9 (E.D.N.Y. Sep. 13, 2021) (quoting *Bernadel v. Comm'r of Soc. Sec.*, No. 14-CV-5170 (PKC), 2015 WL 5719725, at *11 (E.D.N.Y. Sep. 29, 2015)); *see also Jackson v. Colvin*, No. 13-CV-5655 (AJN) (SN), 2014 WL 4695080, at *16 (S.D.N.Y. Sep. 3, 2014) ("[C]laims concerning mental disorders require a robust examination that is sensitive to the dynamism of mental illnesses and the coping mechanisms that claimants develop to manage them[.]"). Here, however, the record reflects no such attempts by the ALJ to identify and contact Dr. Mayak or the doctors Plaintiff saw prior to March 2018, despite indicia of ongoing treatment. *See Berry v. Comm'r of Soc. Sec.*, No. 22-CV-7615 (PKC), 2024 WL 1382765, at *3 (E.D.N.Y. Mar. 21, 2024) (remanding where ALJ failed to seek records of psychiatrist who put Plaintiff on antidepressants); *Perez v. Comm'r of Soc. Sec.*,

No. 22-CV-4545 (PKC), 2023 WL 6308051, at *6 (E.D.N.Y. Sep. 28, 2023) (similar).[7]  The Court

therefore remands the case for further development of Plaintiff's mental health impairment.

**II.     ALJ's Finding that Plaintiff's Fibromyalgia Was Not Medically Determinable**

The Court also finds that remand is necessary because the ALJ did not elucidate its

reasoning for finding Plaintiff's fibromyalgia to be non-medically determinable, thereby

preventing meaningful judicial review.

"[F]ibromyalgia is a disabling impairment" characterized by "'pain all over,' fatigue,

disturbed sleep, stiffness, and . . . multiple tender spots." *Janine H. v. Comm'r of Soc. Sec.*, No.

19-CV-1432 (FPG), 2021 WL 1185872, at *2–3 (W.D.N.Y. Mar. 30, 2021) (first citing *Green-*

*Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003); and then quoting *Sarchet v. Chater*, 78 F.3d

305, 306 (7th Cir. 1996)).  "[A] diagnosis of fibromyalgia is based primarily, if not entirely, on

subjective complaints of pain," *Johnston v. Barnhart*, 378 F. Supp. 2d 274, 281 (W.D.N.Y. 2005),

and there are "no laboratory tests for the presence or severity of fibromyalgia," *Janine H.*, 2021

WL 1185872, at *2 (quoting *Sarchet*, 78 F.3d at 306); *Green-Younger*, 335 F.3d at 108 (similar).

"[P]hysical examinations will usually yield normal results—a full range of motion, no joint

swelling, as well as normal muscle strength and neurological reactions." *Lisa*, 940 F.2d at 45

(quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988) (per

---

[7] Moreover, although the Court acknowledges that the record contained some conflicting conclusions regarding Plaintiff's mental health conditions, (*see* Admin. Tr., Dkt. 6, at 109 (state medical examiner determining Plaintiff had no medically determinable mental impairments); *id.* at 714 (Plaintiff explaining that he was previously referred to psychiatry and psychology, "but was ultimately told 'there is nothing wrong with you'")), these ambiguities "underscore the importance of further developing the record in this case," *Berry*, 2024 WL 1382765, at *3 (compiling cases remanding because the ALJ failed to resolve known ambiguities).  The Court also notes that the Second Circuit has cautioned courts to not place undue reliance on the findings of a consultative physician, particularly in the context of mental health, because "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

curiam)); *Harrison v. Comm'r of Soc. Sec.*, No. 18-CV-6715 (FPG), 2020 WL 607623, at *2 (W.D.N.Y. Feb. 7, 2020) ("[C]laimants 'with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, *yet have normal physical examinations*, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions.'" (emphasis added) (quoting *John v. Berryhill*, No. 1:17-CV-0963 (JJM), 2019 WL 2314620, at *3 (W.D.N.Y. May 31, 2019))).  In addition, "the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days." *Janine H.*, 2021 WL 1185872, at *3 (citation omitted).

To establish medically determinable fibromyalgia, the SSA promulgated the SSR 12-2p Ruling ("SSR 12-2p"), which sets "standards for determining whether fibromyalgia constitutes a medically determinable impairment in the context of a particular claim." *Lucius R. v. O'Malley*, No. 3:22-CV-1312 (MPS), 2024 WL 1200181, at *10 (D. Conn. Jan. 22, 2024).  Under SSR 12-2p, a finding of medically determinable fibromyalgia requires that "(1) a physician must have diagnosed [the claimant with] fibromyalgia[;] (2) the physician must have provided evidence described by either the 1990 American College of Rheumatology ('ACR') criteria or the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's diagnosis must not be inconsistent with other evidence in the record." *Kirsten B. v. Comm'r of Soc. Sec.*, No. 20-CV-1275 (FPG), 2022 WL 2662968, at *2 (W.D.N.Y. July 11, 2022) (quoting *Villar v. Comm'r of Soc. Sec.*, No. 19-CV-0144, 2020 WL 1131225, at *2 (W.D.N.Y. Mar. 9, 2020)).  The 2010 ACR criteria requires showing that (1) the plaintiff has a "history of widespread pain . . . in all quadrants of the body . . . that has persisted (or that persisted) for at least 3 months," (2) the plaintiff had "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems . . . , waking unrefreshed,

15

depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these manifestations [supporting the fibromyalgia diagnosis] were excluded." Social Security Ruling, SSR 12–2p; Titles II and XVI: Evaluation of Fibromyalgia, 77 Fed. Reg. 43640, 43641–42 (July 25, 2021) (footnotes omitted).[8]  The 1990 ACR criteria has the same first and third factors as the 2010 ACR criteria, but its second factor requires a showing of "[a]t least 11 positive tender points on physical examination . . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist." *Id.* at 43641.

As a threshold matter, remand is appropriate because the ALJ's determination does not permit meaningful judicial review.  The ALJ conclusorily stated:

> [P]ursuant to SSR 12-2p *Evaluation of Fibromyalgia*, the record does not contain sufficient evidence to establish fibromyalgia as a medically determinable impairment.  The record does not establish that the claimant meets the criteria set forth in the 1990 ACR criteria for classification of fibromyalgia, or in the 2010 ACR preliminary diagnostic criteria.  Absent this evidence, the undersigned finds that there is insufficient evidence to establish fibromyalgia as a medically determinable impairment.

(Admin Tr., Dkt. 6, at 15.)  However, the ALJ failed to discuss much of the "evidence relevant to Plaintiff's claimed fibromyalgia, let alone apply [SSR] 12-2p's criteria to that evidence to decide whether [his] fibromyalgia is a medically determinable impairment." *See Kirsten B.*, 2022 WL 2662968, at *3.  Without more explicit analysis, the Court cannot assess whether the ALJ's

---

[8] Additional signs include "muscle pain, . . . muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms."  SSR 12–2p, 77 Fed. Reg. at 43642 n.9.

16

determination on this matter is supported by substantial evidence. *See id.* (remanding because "a more explicit analysis of the relevant criteria is required"); *Ernst v. Comm'r of Soc. Sec.*, No. 18-CV-1403 (HBS), 2020 WL 1226896, at *3–4 (W.D.N.Y. Mar. 13, 2020) (remanding where ALJ's analysis amounted to: "[i]n reviewing the[] [SSR 12-2p] guidelines, the claimant's fibromyalgia treatment does not meet these guidelines"); *Melanya B. v. Comm'r of Soc. Sec.*, No. 22-CV-6125 (MWP), 2024 WL 4223655, at *4 (W.D.N.Y. Sep. 18, 2024) (compiling cases reaching a similar conclusion); *cf. Grace*, 2013 WL 4010271, at *14 (explaining remand is appropriate for elaboration of ALJ reasoning).

The ALJ's failure to provide any rationale for his conclusion "undermines any confidence that the ALJ properly applied SSR 12-2p." *Melanya B.*, 2024 WL 4223655, at *4. Indeed, the record indicates that Plaintiff reported experiencing at least some of the symptoms, signs, or co-occurring conditions of fibromyalgia. Plaintiff repeatedly reported, and received treatment for, muscle pain, (*see* Admin. Tr., Dkt. 6, at 498, 501, 504, 507, 511); stiffness, (*see id.* at 348, 455, 461, 464, 468, 474, 478, 482, 488, 511, 531, 568, 574, 577, 580, 595); anxiety, (*see id.* at 574, 577, 580, 583, 589–90, 594, 606–08, 610); numbness or tingling, (*see id.* at 342, 348, 449, 511, 603, 714, 719, 725, 734, 738, 748, 753); and headaches, (*id.* at 449, 455, 488, 492, 501, 504, 507, 574–77, 579–80, 583, 588–91, 593–96, 600–02, 614, 638, 716, 724–25, 750). *See Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) (rejecting ALJ's finding of non-medically determinable fibromyalgia and noting that "[p]laintiff's treatment notes from the relevant [time] period document that she was experiencing many of the typical symptoms of fibromyalgia," such "pain in her back and legs" and "complaints of upper body/neck pain and fatigue"). At points in the record, however, the ALJ seemed to focus only on the existence of tender points, a factor only relevant to the 1990 ACR criteria. *See* SSR 12-2P, 77 Fed. Reg. at 43641–42; (*see also* Admin

17

Tr., Dkt. 6, at 15, 18–19 (ALJ acknowledging Plaintiff's headaches, bodily pain, and pins and needles sensation, but not discussing these symptoms in the context of the 2010 ACR criteria); *id.* at 75 (ALJ inquiring as to the 1990 ACR criteria in the hearing but not as to the 2010 ACR criteria regarding fibromyalgia's symptoms and signs)).  Moreover, Plaintiff's medical records suggest he may have been diagnosed with fibromyalgia.  (*See id.* at 484, 496, 500 (records using assessment codes for fibromyalgia); *id.* at 82 (Plaintiff's hearing testimony that "what [his] other doctors said, they believe [fibromyalgia is] probably why [he is] feeling [muscle spasms and electrocution]"); *id.* at 504, 507 (Island Interventional Pain Management records noting that Plaintiff "has been told he has fibromyalgia" and was requesting a referral to, and then began seeing, a rheumatologist for this condition).)[9]  Particularly in light of these indicia in the record, remand is appropriate to ensure that the ALJ properly applied SSR 12-2p—and that this Court may effectively review his decision. *Takiea T. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0138 (JGW), 2025 WL 1125306, at *4–6 (W.D.N.Y. Apr. 16, 2025) (remanding where certain signs of fibromyalgia were identified throughout the records but not analyzed under the ACR criteria); *cf. Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-2819 (AJN) (SLC), 2021 WL 4462000, at *14–15 (S.D.N.Y. June 16, 2021) (remanding where ALJ failed to consider indicia that "[p]laintiff's symptoms . . . satisfied the 2010 ACR" criteria and "numerous medical diagnoses"), *report and recommendation adopted*, No. 20-CV-2819 (AJN), 2021 WL 4461272 (S.D.N.Y. Sep. 29, 2021).[10]

---

[9] (*See also* Admin. Tr., Dkt. 6, at 74 (ALJ stating this "didn't necessarily look like it was a *confirmed* diagnosis" but Dr. Yamour responding that Plaintiff's "treating doctors mention that he has fibromyalgia" and that Dr. Yamour "wouldn't say he doesn't" (emphasis added)).)  This is another ambiguity in the record that should have been developed.

[10] And to the extent the administrative record contains insufficient evidence of other diagnoses being ruled out, the proper course of action was for the ALJ to seek to develop the record by reaching out to Plaintiff's doctors, not to outright dismiss his fibromyalgia as non-medically determinable. *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058 (MJR), 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019) ("SSR 12-2p directs an ALJ to take additional steps, such as

18

Finally, the Court is concerned that the ALJ's analysis of Plaintiff's fibromyalgia stems from a misunderstanding of the nature of the condition. As noted above, fibromyalgia is "renowned as an elusive and mysterious disease." *Susan C. v. Comm'r of Soc. Sec.*, No. 21-CV-0482, 2023 WL 3191607, at *3 (W.D.N.Y. May 2, 2023) (citing *Sarchet*, 78 F.3d at 306). Its "cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014) (quoting *Sarchet*, 78 F.3d at 307). For that reason, courts in this Circuit have taken particular care to ensure that in analyzing fibromyalgia, ALJs recognize that it may not manifest in "abnormal objective findings," and have remanded where ALJs place "undue emphasis" on benign clinical findings, such as normal neurological exams, "normal muscle tone, intact sensation, negative straight leg raise, normal gait, good strength, and normal grip strength."[11] In a similar vein, courts in this Circuit

---

recontacting the claimant's treating physicians, when the record lacks adequate information to determine whether the claimant has a medically determinable impairment of fibromyalgia. Thus, rather than reject [plaintiff's] fibromyalgia as a medically determinable impairment due to insufficient evidence in the record, the ALJ should have recontacted [plaintiff's treating rheumatologist] or one of [her] other physicians to determine whether [her] fibromyalgia satisfies the criteria set forth in SSR 12-2p." (internal citation omitted)).

[11] *See Melanya B.*, 2024 WL 4223655, at *4 (quoting *Lisa E.*, 2021 WL 4472469, at *7); *White v. Comm'r of Soc. Sec.*, No. 5:14-CV-1140 (GTS) (WBC), 2016 WL 2865724, at *6 (N.D.N.Y. Apr. 21, 2016) (maintaining that an ALJ's determination that "[p]laintiff's limitations could not be due to her fibromyalgia because of her normal physical examinations" reflected a "fundamental misunderstanding" of the condition), *report and recommendation adopted*, No. 5:14-CV-1140 (GTS) (WBC), 2016 WL 2858859 (N.D.N.Y. May 16, 2016); *Campbell v. Colvin*, No. 5:13-CV-0451 (GLS) (ESH), 2015 WL 73763, at *6 (N.D.N.Y. Jan. 6, 2015) ("[D]enying a fibromyalgia-claimant's claim of disability based in part on a perceived lack of objective evidence is reversible error."); *Smiley v. Colvin*, No. 14-CV-266S, 2015 WL 5918376, at *4 (W.D.N.Y. Oct. 9, 2015) (finding ALJ's emphasis on benign examinations and normal ranges of motions to be uninformative of chronic fatigue syndrome and fibromyalgia-based disability); *Shadha A. v. Comm'r of Soc. Sec.*, No. 20-CV-1535 (MWP), 2022 WL 4591308, at *7 (W.D.N.Y. Sep. 30, 2022) (explaining that an ALJ's emphasis of benign, unremarkable, and normal examinations "ignores that plaintiff was diagnosed with fibromyalgia").

19

have cautioned that emphasis on a claimant's "conservative" course of treatment fails to "recognize the elusive nature of fibromyalgia."[12]  Here, however, the ALJ noted that, "[d]espite the fact the claimant complained of total body pain," "his workups were unremarkable," his "neurological examination was largely within normal limits," his physical exams were "healthy," and his "treatment has been essentially routine and/or conservative in nature." (Admin. Tr., Dkt. 6, at 18–21; *see also id.* at 18, 20 (noting that plaintiff "did not require the use of any assistive devices," "did not require any surgical procedures, [and] was not hospitalized for physical reasons").)[13]  In light of the ALJ's potential misunderstanding of fibromyalgia, the Court directs the ALJ, on remand, to give specific consideration to Plaintiff's treatment notes to determine whether Plaintiff has fibromyalgia (including whether, as set forth in SSR 12-2p, it waxes and wanes. *See* SSR 12-2P, 77 Fed. Reg. at 43644.

---

[12] *See Hyer v. Colvin*, No. 3:12-CV-0054 (GTS) (DEP), 2013 WL 1193444, at *7 (N.D.N.Y. Feb. 27, 2013) ("[G]iven the attributes of fibromyalgia, [the ALJ] placed undue reliance upon the conservative course of treatment prescribed in support of his [conclusions as to doctors' opinions]."), *report and recommendation adopted*, No. 3:12-CV-0054 (GTS) (DEP), 2013 WL 1193431 (N.D.N.Y. Mar. 22, 2013); *John P. v. Comm'r of Soc. Sec.*, No. 1:21-CV-0277 (EAW), 2023 WL 5738448, at *7 (W.D.N.Y. Sep. 5, 2023) (remanding in part because ALJ rejected disability based on conservative level of care plaintiff received (citing *Hyer*, 2013 WL 1193444, at *7)).

[13] Although the ALJ made these comments in the context of the RFC analysis, where it did not discuss fibromyalgia, these comments lead the Court to believe that clarification of the relevant standards and the nature of fibromyalgia is warranted here.

**CONCLUSION**

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies Defendant's cross-motion. The Commissioner's decision is vacated, and this action is remanded for further administrative proceedings consistent with this opinion, pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.


/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 30, 2026
       Brooklyn, New York